UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br>v.<br>JAMES FRANK MARTIN,<br><br>Defendants. | Case No. 3:16-cr-00067-MMD-WGC<br><br>ORDER |

**I.  SUMMARY**

Defendant James Frank Martin pled guilty to count one of the indictment charging him with Felon in Possession of a Firearm. (ECF No. 24.) Defendant reserved the right to argue that his prior conviction under Nevada law—extortionate collection of a debt under NRS § 205.322 ("Nevada Extortion")—is not a crime of violence within the meaning of the United States Sentencing Guidelines § 4B1.2(a). Defendant asserts this argument in his Sentencing Memorandum. (ECF No. 31.) The Court has reviewed the government's response (ECF No. 32) and Defendant's reply (ECF No. 34). For the reasons discussed below, the Court finds that Defendant was convicted of a crime of violence within the meaning of § 4B1.2(a).

**II.  BACKGROUND**

Defendant was arrested during a traffic stop on September 29, 2016, when detectives discovered two handguns in his car as well as methamphetamine and a large quantity of cash in his pocket. (ECF No. 24 at 4-5.) Defendant was then indicted on three counts on October 19, 2016: two counts of Felon in Possession of a Firearm, in violation

of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and one count of Possession with the Intent to Distribute a Controlled Substance — Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (ECF No. 1 at 1-2.)

Defendant pled guilty to the first count (Felon in Possession of a Firearm) on August 15, 2017. (ECF No. 23.) Pursuant to a written plea agreement and Fed. R. Crim. P. 11(c)(1)(A), the government agreed to dismiss the remaining counts after sentencing. (ECF No. 24 at 3.)

USSG § 2K2.1 governs the base offense level for a violation of 18 U.S.C. § 922(g)(1). The guideline states that the base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." USSG § 2K2.1(a)(4)(A).

Defendant was previously convicted of Nevada Extortion (a felony), on or about December 20, 2010, in the Second Judicial District Court of the State of Nevada. (ECF No. 32-1 at 19.) The parties dispute whether Nevada Extortion is a crime of violence.

**III. DISCUSSION**

**A. Legal Framework**

To determine whether Nevada Extortion is a crime of violence, this Court must apply the three-step process set forth in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and further explained in *Mathis v. United States,* 136 S. Ct. 2243 (2016). First, under the categorical approach, this Court compares the elements of the statute of conviction (here, Nevada Extortion) with the generic federal definition. *United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015). If the elements of the statute of conviction are the same or narrower than the elements of the generic federal offense, then the state offense is "a categorical match" and deemed a crime of violence. *See Lopez-Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015). "When a statute . . . criminalizes conduct that goes beyond the elements of the federal offense, [courts] turn to step two: determining whether the statute is 'divisible' or 'indivisible.'" *Id.* at 867-68 (citing *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014)). As the court explained in *Mathis,* a

statute is indivisible when it "sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis,* 136 S. Ct. at 2248. When a single statute lists "elements in the alternative, and thereby define[s] multiple crimes," the statute is divisible. *Id.* at 2249. If it is divisible, then the court turns to step three — the modified categorical approach—where the sentencing court determines which of the alternative elements listed under the statute was integral to defendant's conviction. *Id.*

**B.    Analysis**

**1.    Categorical Approach**

"The term 'crime of violence' means any [felony], that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is . . . extortion . . . ." USSG § 4B1.2; *see also* USSG § 2K2.1(a)(4)(A) (incorporating by reference this definition). Extortion under the Sentencing Guidelines ("Guidelines Extortion") means "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." USSG § 4B1.2, Application Note 1. The government contends that the definition of Guidelines Extortion encompasses threats to property (ECF No. 32 at 2), though that is not readily apparent from the face of the guideline.

By contrast, Nevada Extortion explicitly encompasses threats to property:

> A person who causes a debtor to have a reasonable apprehension that a delay in repaying the debt could result in the use of violence or other criminal means to:
>   1. Harm physically the debtor or any other person; or
>   2. Damage any property belonging to or in the custody of the debtor,
> is guilty of extortionate collection of debt which is a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $10,000. In addition to any other penalty, the court shall order the person to pay restitution."

NRS § 205.322.

Defendant argues that Nevada Extortion is broader than Guidelines Extortion— Nevada Extortion includes threats to persons and property, whereas Guidelines Extortion only includes threats to persons. (ECF No. 31 at 2-3.) The government counters that

Guidelines Extortion encompasses threats to property, advancing a number of speculative arguments about the Sentencing Commission's intent. (ECF No. 32 at 5-9.)

The Court is persuaded that Guidelines Extortion does not encompass threats to property. When terms are not defined in the Guidelines, the Court employs their ordinary or natural meaning. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *United States v. Shouse*, 755 F.3d 1104, 1106 (9th Cir. 2014). Giving the words "physical injury" their ordinary and natural meaning, it is difficult to see how they could apply to threats to property. Defendant aptly illustrates that the word "injury" is non-idiomatic if it is applied to property. (ECF No. 34 at 5 ("The phrases, 'he injured my computer,' or, 'she injured her car' are absurd.").) Moreover, Black's Law Dictionary defines "physical injury" as "bodily injury," which in turn is defined as "physical damage to a person's body." Black's Law Dictionary (10th ed. 2014). In addition, the term "wrongful use of force" more readily brings to mind the idea of force applied to individuals than to objects.

The Court need not consider the government's speculative arguments about the Sentencing Commission's intent since the meaning of Guidelines Extortion is apparent on its face. The arguments are unpersuasive besides. First, the government argues that Ninth Circuit precedent defined the generic federal crime of extortion to include threats to property. (ECF No. 32 at 3-4 (citing *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008); *United States v. Flores-Meija*, 687 F.3d 1213 (9th Cir. 2012); *United States v. Harris*, 572 F.3d 1065 (9th Cir. 2009).) But all these cases were decided before the Sentencing Guidelines defined extortion. (*Id.* at 3-4.) The Ninth Circuit would presumably adhere to the Guidelines' definition as opposed to a definition formulated in its absence.

The government next argues that the Sentencing Commission must have intended to include threats to property in the definition of Guidelines Extortion because the Sentencing Commission sought to refocus the definition of extortion on "the most dangerous offenders." (*Id.* at 6.) The government contends that "the crime of extortion historically has included threats to property, such as when a gang enforcer threatens to burn down a person's store unless the person pay protection money. Such conduct is

4

unquestionably dangerous and violent." (*Id.*) While the government's speculation is reasonable, it is just as reasonable to speculate that the Sentencing Commission found offenders who physically injure persons to be more dangerous than offenders who threaten property.

Third, the government argues that force may be applied to inanimate objects, not just persons. (*Id.* at 8.) This argument is not dispositive, however, because the species of extortion explicitly excluded from Guidelines Extortion (injury to reputation) could also be characterized as force. In the same way that threatening someone's reputation could force that person to do something, threatening someone's property could have the same effect. The government fails to distinguish force vis-à-vis an individual's reputation, which is explicitly excluded from Guidelines Extortion, from force vis-à-vis an individual's property.

Fourth, the government argues that if the Sentencing Commission meant to limit Guidelines Extortion to harm to persons, it would have said so. (*Id.*) For instance, prong (1) of USSG § 4B1.2 explicitly states that "the use, attempted use, or threatened use of physical force" must be made "against the person of another." While the government's argument has some persuasive value, it is not dispositive. Particularly given the ordinary and natural meaning of the words in prong (2), it is challenging to conceive of Guidelines Extortion as encompassing threats to property. Moreover, even if Guidelines Extortion were ambiguous, the rule of lenity would counsel against finding that Guidelines Extortion encompasses threats to property. *United States v. Fuentes-Barahona*, 111 F.3d 651, 653 (9th Cir. 1997) ("The rule of lenity applies to the Sentencing Guidelines . . . ."); *United States v. Martinez*, 946 F.2d 100, 102 (9th Cir. 1991) ("[T]he rule of lenity requires that we infer the rationale most favorable to [criminal defendants]."); *see also United States v. O'Connor*, 874 F.3d 1147, 1157 (10th Cir. 2017) (applying the rule of lenity in determining that Guidelines Extortion does not encompass threats to property).

In sum, the Court finds that the elements of Nevada Extortion are broader than the elements of the generic federal extortion offense.

///

### 2. Divisibility

Given that the Nevada Extortion is not a categorical match for Guidelines Extortion, the Court must consider whether Nevada Extortion is divisible. *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-68 (9th Cir. 2015). The government argues that the Nevada Extortion statute is divisible and its provisions regarding damage to persons and damage to property are alternative elements. (ECF No. 32 at 9-10.) Thus, the government argues, the Court should look to the documents relating to the prior conviction to determine if the offense of conviction matches Guidelines Extortion. (*Id.*) Defendant argues that the statute does not create alternative elements but merely sets out alternative means by which extortion can be carried out. (ECF No. 34 at 6-9.)

In *Mathis*, the Court instructs that to resolve the threshold question of elements or means, the sentencing judge can look to the following sources: whether a state court decision definitively answers this question; whether alternative violations of the statute carry different punishments; whether the statute is drafted to offer illustrative examples; and whether the question is clear from looking at the plain language of the statute. 136 S. Ct. at 2256. If the statute is not clear, this Court can look to the record of the prior conviction to determine what elements were charged and required to be proved at trial. *Id.* at 2256-57.

Here, there are no relevant state court decisions; the alternatives do not carry different punishments; the statute is not drafted to offer illustrative examples; and the statute itself does not identify which elements must be charged. Accordingly, the Court must examine the record of the prior conviction to determine what elements were charged.

Upon review of that record, the Court finds that threat to property is an alternative element as opposed to an alternative means. Neither the information (ECF No. 32-1 at 3) nor the guilty plea memorandum (*id.* at 13) identify threat to property as an element of the charge that must be proved. Instead, the information charges that Defendant threatened physical injury to an individual (*id.* at 3), and the guilty plea memorandum indicates that this is an element the state would have been required to prove at trial (*id.* at 13).

Accordingly, threat to property is an alternative element—not an alternative means—that must be proved in those cases where prosecutors charge Nevada Extortion based on threat to property.

The Court concludes that Nevada Extortion is a divisible statute.

### 3. Modified-Categorical Approach

The Court must turn to step three and apply the modified-categorical approach. *Mathis,* 136 S. Ct. at 2249. This approach "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281.

Defendant's guilty plea memorandum shows that Defendant was convicted of Nevada Extortion under the element "harm physically the debtor or any other person." (ECF No. 32-1 at 13.) The element to which Defendant pled guilty could not reasonably be construed to encompass threats to property:

> I, willfully, unlawfully and with intent to cause ALEX STREET, a person who owed a monetary debt to me, to have reasonable apprehension that delay in repaying said monetary debt to me could result in the use of violence or other criminal means to harm physically the debtor, ALEX STREET, to wit: ALEX STREET owed me a monetary debt for narcotics ALEX STREET purchased from me, whereafter . . . I entered ALEX STREET's residence . . . demanding payment for the debt, and told ALEX STREET he would suffer physical harm if he did not repay said debt, which acts did cause ALEX STREET to believe he would be badly hurt if he did not repay said debt.

(*Id.*) The information contains substantially similar language. (*Id.* at 3.) It is clear from the information and the guilty plea memorandum that Defendant pled guilty to Nevada Extortion under the element "harm physically the debtor or any other person" instead of the element "damage any property belonging to or in the custody of the debtor." Given that Guidelines Extortion clearly encompasses threats of harm to persons, Defendant's conviction falls within the definition of Guidelines Extortion. Accordingly, Defendant's

conviction for Nevada Extortion qualifies as a conviction of a crime of violence pursuant to USSG § 4B1.2(a)(2).

**IV.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Court's decision.

The Court therefore finds that Defendant's conviction for Nevada Extortion qualifies as a conviction of a crime of violence under the Sentencing Guidelines. The Probation Office correctly calculated the base offense level to be a level 20.

DATED THIS 11th day of December 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE